UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

THOMAS N. LUMPKIN,

    Plaintiff,

        v.                                             Civ. No. 3:19-cv-01159 (WIG)

ANDREW M. SAUL,
Commissioner of
Social Security,

    Defendant.

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of the plaintiff, Thomas N. Lumpkin's, application for Title II disability insurance benefits ("DIB") . It is brought pursuant to 42 U.S.C. §405(g).[1] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding this case for a rehearing. [Doc. #15]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. #19]. After careful consideration of the arguments

---

[1]     Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

1

raised by both parties, and thorough review of the administrative record, the Court denies Plaintiff's motion for order reversing the Commissioner's decision and grants the Commissioner's motion to affirm.

## **LEGAL STANDARD**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and

(5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920.[2] The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive…." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the Commissioner's decision is supported by substantial evidence, that decision will be sustained,

---

[2] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 et seq., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

I. **BACKGROUND**

   A. **Facts**

   Plaintiff filed his DIB application on October 6, 2016, alleging an onset of disability as of May 1, 2016. His claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On June 15, 2018, a hearing was held before Administrative Law Judge Michael McKenna ("the ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE"), testified at the hearing. On July 27, 2018, the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On May 28, 2019, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

   Plaintiff was fifty-nine years old on the alleged onset date. (R. 83). He completed high school, is able to communicate in English, and has past relevant work as a cleaner in a hospital lab. (R. 24, 54). Plaintiff's complete medical history is set forth in the Statement of Facts filed by the parties. [Doc. ##15-2, 19-1]. The Court adopts these statements and incorporates them by reference herein.

   B. **The ALJ's Decision**

   The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act.

   At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 1, 2016. (R. 17). At Step Two, the ALJ found Plaintiff had the following severe impairment: neurocognitive disorder. (R. 17-18). At Step Three, the ALJ

found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 18-19). Next, the ALJ determined Plaintiff retains the following residual functional capacity[3]:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple, routine tasks.

(R. 19).

At Step Four, the ALJ found that, through the date last insured, Plaintiff was able to perform his past relevant work as a cleaner, hospital lab. (R. 24). The ALJ relied on the testimony of a vocational expert to find that Plaintiff was capable of performing the requirements of his past relevant work. (R. 25). Accordingly, the ALJ determined that Plaintiff was not disabled from May 1, 2016, the alleged onset date, through July 27, 2018, the date of the ALJ's decision. (R. 25).

## II. DISCUSSION

Plaintiff raises several arguments in support of his Motion to Reverse, which the Court will address in turn.

### A. Step Two and Physical RFC Findings

Plaintiff first argues that the ALJ's finding that Plaintiff's physical impairments have no impact on his ability to perform basic work activity is not supported by substantial evidence. [Doc. #15-1 at 3-16]. Specifically, Plaintiff argues that the ALJ erred at Step Two when he found that Plaintiff's physical impairments were not severe and formulated a RFC without physical limitations. He argues that, the ALJ erred by "(1) finding that Plaintiff has no physical limitation of his ability to work *at all*, and/or (2) failing to perform a proper credibility analysis of the

---

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. §§404.1545(a)(1); 416.945(a)(1).

5

limitations arising from all of Plaintiff's medically determinable impairments." [Doc. #15-1 at 6].

A Step Two determination requires the ALJ to determine the severity of the Plaintiff's impairments. 20 C.F.R. §§404.1520(a)(4)(ii); *see also id.* at (c). At this step, the Plaintiff carries the burden of establishing that he is disabled, and must provide the evidence necessary to make determinations as to his disability. 20 C.F.R. §404.1512(a). An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See* Social Security Ruling ("SSR") 96–3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). Impairments that are "not severe" must be only a slight abnormality that has a minimal effect on an individual's ability to perform basic work activities. *Id.*

> At step two, if the ALJ finds an impairment is severe, "the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Social Security,* 73 F. App'x. 801, 803 (6th Cir. 2003). While the Second Circuit has not directly stated that incorrectly applying the step two legal standard is harmless error, when some of a claimant's impairments are determined to be severe and others not, other circuits have so stated. *See, e.g., Carpenter v. Astrue,* 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). A harmless error approach is consistent with the Second Circuits finding that step two severity determinations are to be used only to screen out de minimis claims. *See Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995).

*Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), *aff'd,* 515 F. App'x 32 (2d Cir. 2013). "Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." *Pompa*, 73 F. App'x at 803 (citing 20 C.F.R. §404.1545(e)).

The analysis at Step Two is wholly independent of the analysis at later steps. Accordingly, not finding certain impairments severe at step two does not affect the ultimate disability determination. Where an ALJ finds in a claimant's favor at Step Two, "even if he …

erroneously concluded that some of [the claimant's] other impairments were non-severe, any error [is] harmless." *Salles v. Comm'r of Soc. Sec.,* 229 F. App'x. 140, 145 n. 2 (3d Cir. 2007). "As such, where the Commissioner finds that the claimant suffers from even one severe impairment, any failure...to identify other conditions as being severe does not compromise the integrity of the analysis." *Ross v. Astrue,* Civil Action No. 08–5282 (SDW), 2010 WL 777398, at *5 (D.N.J. Mar. 8, 2010) (citing *Salles,* 229 F. App'x at 145 n. 2; *Rivera v. Comm'r of Soc. Sec.,* 164 F. App'x 260, 261 n. 2 (3d Cir. 2006)); *see, e.g.,* Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless, any error [] became harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Here, the ALJ found that Plaintiff had the severe impairments of neurocognitive disorder. (R. 17-18). Plaintiff argues that he has several medically determinable physical impairments including, asymptomatic HIV, chronic hepatitis, and a 3.9 mm aneurysm of the right internal carotid artery ("ICA"). Other physical conditions listed by Plaintiff included an abnormal gait and poor balance, history of breast cancer and urinary leakage. The ALJ considered these conditions and found that they, "by themselves, produce minimal symptoms, and do not impact the claimant's ability to perform basic work activities, [and] are considered to be non-severe impairments." (R. 18).

Nevertheless, because the ALJ did find a severe impairment and proceeded with the sequential evaluation, all impairments, whether severe or not, were considered as part of the remaining steps. Indeed, the ALJ's decision reflects that he considered plaintiff's other alleged impairments in following the above-described sequential process. *See* R. 18-22.

7

Accordingly, the ALJ's failure to specifically determine whether each of plaintiff's additional claimed impairments was severe is harmless error, and would not support a reversal of the Commissioner's decision. Therefore, the Court finds no reversible error at Step Two of the sequential evaluation.

Despite Plaintiff's arguments to the contrary, the ALJ's RFC determination is supported by substantial evidence of record. Specifically, the ALJ conducted a detailed review of the relevant evidence, including plaintiff's testimony, treatment notes from Plaintiff's medical providers, diagnostic imaging and the medical opinions of record. (R. 18-24).

The ALJ appropriately noted the medical evidence, the reports from physicians in weighing the opinions and assessing the RFC. Indeed, the ALJ demonstrated that he carefully considered Doctors Fierer, Parekh, Rhyee, Firestone, Furst-Nichol's treatment records and diagnostic testing. For example, an ultrasound of Plaintiff's abdomen on August 24, 2017, to address Chronic Viral Hepatitis B, showed "no significant abnormality." (R. 369). Plaintiff's pancreas was normal, his liver was normal size and showed no hepatic abnormality and his gallbladder was "without stones or wall thickening." *Id.* A review of the treatment records show no other treatment or complaints with regard to Hepatitis B.

With regard to the identification of an aneurysm and treatment for an "unsteady gait" and "mild dysmetria on the left" (R. 372), a treatment record from Dr. Furst-Nichols, dated May 3, 2018, state,

> 61-year-old male with unsteady gait, mild dysmetria on the left and identified right cavernous portion of the ICA 3.9 mm aneurysm. Patient is generally neuro intact, these abnormalities are not necessarily explained by the ICA aneurysm. I discussed with Dr. Matouk, the covering neuro interventionalist, who recommends that the patient follow-up in 1 year with Dr. Heber. He states that this is a low risk aneurysm, and does not require any aggressive or inpatient workup. Patient will need a repeat MRA performed at the time of evaluation by

>     Dr. Heber. Will discuss with the infectious disease fellow, who sent the patient in for evaluation. No labs indicated or further workup at this time.

(R. 372-73). There is no prescription in the record for an assisted device from a treating source and no further treatment for unsteady gait, such as physical therapy or referral to a specialist. It is noted that when Plaintiff was seen for right ankle pain in July 2016, that the X-Ray showed the right ankle was intact without fracture or dislocation with "minor plantar calcaneal spurring." (R. 313). The physician recommended Ace bandage, Tylenol, elevation and icing. (R. 313). There was not further treatment or physical therapy for right ankle pain after that date.[4] In April 2018, an x-ray of Plaintiff's hips showed "mild demineralization." (R. 375). Plaintiff solely relies on his testimony at the administrative hearing to support his argument that he can no longer perform his past relevant work. [Doc. #15-1 at 9]. This is insufficient to support his claim of severe physical limitations. Further, there is no opinion in the administrative record from a treating source stating that either, unsteady gait or the ICA aneurysm, significantly limits Plaintiff's ability to work.

Next, objective medical evidence of record shows that Plaintiff's asymptomatic" HIV is well controlled with medication. (R. 18, 321 (5/9/16-"He has been fixed successfully maintained on Atripla therapy and sees infectious disease on a regular basis."); R. 343-44 (1/26/17-HIV Questionnaire. "Pt. is asymptomatic with negative exam at this time." HIV "well-suppressed on Atripla. No prophylaxis."); R. 363, 371 (objective testing showed normal CD4 count and non-detectable HIV). While it is accurate that treatment records show Plaintiff's weight was chronically low and fluctuated from a low of 94 pounds to 135 pounds, the record does not show that his low weight impacted his ability to function

---

[4] It is noted that at a follow-up appointment on July 28, 2016, Plaintiff pointed to "his heel and not his ankle." (R. 320).

9

in a work setting. (R. 311 (7/26/16-"chronic low weight"); R. 321 (5/9/16-5'6", 102 lbs.); R. 322, 324 (10/17/16-5'6", 94 lbs. "Pt has recently los[t] 8 lbs. in 5 months. Per pt. he has been traveling frequently, only eats 2 meals per day. Either he doesn't have time or he doesn't feel like eating); R. 337 (1/20/17-125 lbs., 5'8"); R. 350 (2/6/17-135 lbs., 5'9"); R. 378 (4/26/18- 120 lbs.); R. 371 (5/3/18-Plaintiff reported that "he has some mild weight loss, but [has] always been very thin.");R. 53 (6/15/18-Plaintiff testifying that he weighed 95 pounds and was 5'9" tall)). Rather, in the treatment record, recording Plaintiff's lowest weight at 94 pounds, the clinician noted that the physical examination was required by the Department of Transportation. (R. 325). The examining APRN found no physical limitations during the examination, stating "DOT clearance given for pt." (R. 324-25). Treatment records show that Plaintiff retained normal movement of all his extremities (R. 324-25, 359, 362, 372), full strength in his upper and lower extremities (R. 371), as well as normal muscle tone, normal gait and stance, and normal deep tendon reflexes. (R. 324-25). There is no opinion in the administrative record from a treating source stating that Plaintiff's asymptomatic HIV diagnosis and treatment significantly limits his ability to work.

Finally, there are no treatment records in the administrative record addressing urinary incontinence or breast cancer. Rather, breast cancer is noted in the treatment records under "past medical treatment." (R. 338).

The limitations noted in the treatment records and the diagnostic testing support the ALJ's RFC findings. For the reasons stated, the Court finds no error in the ALJ's physical RFC finding, which is supported by substantial evidence of record.

### B. Mental RFC Finding

Plaintiff next argues that the ALJ's mental RFC is contrary to law and not supported by substantial evidence. [Doc. #15-1 at 16-20). Plaintiff contends that he "has been diagnosed with a neurocognitive disorder and has reported memory loss and cognitive slowing interfering with his ability to complete tasks." [Doc. #15-1 at 18 (citing R. 349-52)]. Plaintiff relies heavily on the statements he provided to the consultative examiner in February 2017, which were incorporated into the psychiatric evaluation. . (R. 349-52). However, Psychologist Rafael Mora de Jesus, Ph.D. did not review any medical records in forming his opinion and his evaluation is not supported by the objective medical evidence of record. *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) ("A medical opinion may be given significant weight only if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.' 20 C.F.R. § 404.1527(d)(2).").

Dr. Mora de Jesus stated, in relevant part, that

> [Plaintiff] is able to manage his finances, care for self, problems include forgetfulness, rate of responding and making decisions. Provided his medical condition and the fact that this appears to be a deterioration from prior levels of functioning the examiner questions the possibility of a neurological reason for this. The possibility of his presenting some symptoms of a dementia due to his having a[n] immune deficiency is presented. In addition, Mr. Lumpkin has a history of having suffered meningitis and was in a coma for a period of time which also frequently is associated with neurocognitive deterioration. The following <u>provisional diagnosis is provided pending further more exhaustive neurocognitive assessment</u>.

(R. 352 (emphasis added)). The record shows that Plaintiff was treated for meningitis in 1992 and retired in 2016, demonstrating that any deficits associated with meningitis and coma did not impact his ability to function in a work setting. (R. 311, 350 ("He worked twenty seven years at the Department of Public Health."); *see* R. 55 (Plaintiff testified that he worked for the State of Connecticut from 2003 through 2016)). Despite the

11

evaluation by the consultative examiner on February 6, 2017, there is no evidence that Plaintiff was seen by his treating physicians for "more exhaustive neurocognitive assessment" and there is no evidence from his treatment providers of neurocognitive decline associated with his HIV status. Indeed, the HIV Questionnaire completed on January 26, 2017, days <u>before</u> the psychiatric consultative examination, states that Plaintiff is "asymptomatic with negative exam at this time." (R. 343). Dr. Price further noted that Plaintiff had no "limitations in activities of daily living and/or changes in mental status (i.e., memory, concentration, personality, etc.)." (R. 344). Further, treatment records that post-date the psychiatric evaluation do not note any neurocognitive symptoms or deficits. *See* R. 372-73 (5/3/18-"Patient is generally neuro intact….").

An ALJ has the responsibility to determine a claimant's RFC based on all the evidence of record. 20 C.F.R. §§416.945(a), 416.946(c). A plaintiff's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). Although "[t]he RFC determination is reserved for the commissioner...an ALJ's RFC assessment is a medical determination that must be based on probative evidence of record.... Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." *Walker v. Astrue*, No. 1:08CV00828(RJA)(JJM), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010)(quoting *Lewis v. Comm'r of Soc. Sec.*, No. 6:00CV1225(GLS), 2005 WL 1899, at *3 (N.D.N.Y. Aug. 2, 2005)(internal citations omitted)). Nevertheless, plaintiff has the burden to demonstrate functional limitations that would preclude any substantial gainful activity. *See* 20 C.F.R. §416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.") 42 U.S.C. §423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other

evidence of the existence thereof as the Commissioner of Social Security may require."). "A lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." *Reynolds v. Colvin*, 570 F. App'x 45, 47 (2d Cir. 2014).

Here, the ALJ conducted a detailed review of the relevant evidence, including plaintiff's testimony, treatment notes from Plaintiff's medical providers, the consultative examiner's report and the medical opinions of record. The ALJ specifically considered the treatment records of Plaintiff's physicians and Plaintiff's activities of daily living ("ADL") in determining the psychiatric technique and mental RFC. (R. 18-19; 21-22  (citing R. 324 (10/17/16-Dr. Fierer noting no neurological symptoms, "not depressed; sleep habits unremarkable; mood not anxious."); R. 359 (6/13/17 Dr. Parekh noting "Neurological: Negative for dizziness, weakness, light-headedness and headaches." "Psychiatric/Behavioral: Negative for behavioral problems. The patient is not nervous/anxious."); R. 362 (8/18/17-Dr. Rhyee noting "Neurological: He is alert and oriented to person, place, and time. He has normal strength. He displays no tremor." "Psychiatric: he has a normal mood and affect. His speech is normal. Cognition and memory are normal."); R. 372 (5/3/18-Dr. Furst-Nichols noting "Neuro alert and oriented" "Psych Mood and manner appropriate"); R. 246-53 (1/3/17-ADL Questionnaire reporting that upon awakening he gets ready to go to Connections, he sometimes cooks, can shop by phone and mail, can pay bills and use a checkbook/money orders, has never been fired from a job because of problems getting along with other people, handles changes in routine well and has not noticed any unusual behavior or fears); *see* R. 312 (7/25/16 E.D. treatment records "Neurological: He is alert and oriented to person, place and time." "Psychiatric: He has a normal mood and affect."); R. 344 (1/26/17-HIV Questionnaire finding no limitations in activities of daily living and/or changes in

mental status (i.e., memory, concentration, personality, etc.)). The ALJ also considered Plaintiff's testimony and ADL report in determining the RFC nonexertional limitation to "simple, routine tasks.". (R. 19-20 ).

> However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 96–7p; *Gernavage v. Shalala,* 882 F. Supp. 1413, 1419 (S.D.N.Y.1995).

*Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012).

The Court has painstakingly reviewed the record and finds that there is no error in the ALJ's decision to give "partial weight" to the psychiatric consultative examiner's opinion, stating that "Dr. de Jesus' evaluation is not given great weight, as he did not provide specific limitations for the claimant in the work setting." (R. 22). Moreover, the ALJ properly considered the opinions of state agency consultants Paul Cherry, Ph.D. and Michelle Leveille, Psy.D. (R. 24). Drs. Cherry and Leveille opined that Mr. Lumpkin was "moderately limited with detailed instructions, maintaining attention and concentration for extended periods, and completing a normal workday/workweek without interruption, but could handle simple instructions." (R. 24 (citing Ex. 2A at 10-11; Ex. 4A at 9-10)). "State agency medical and psychological consultants are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation… and these opinions "may constitute substantial evidence if they are consistent with the record as a whole." *Wessel v. Colvin*, No. 3:14CV00184 (AVC), 2015 WL 12712297, at *7 (D. Conn. Dec. 30, 2015) (citations omitted). Here, the state agency doctor's opinions that plaintiff "retains the ability to understand, remember and carry out simple instructions" is supported by Plaintiff's treatment records. [(R. 93; R. 106). *Monroe v. Comm'r of Soc. Sec.,* 2016 WL 7971330, at *8 (N.D.N.Y. Dec. 29, 2016) ("Although the Second Circuit has

14

made it clear that the opinions of State agency medical consultants ... may constitute substantial evidence to support an ALJ's RFC determination, the opinion of such examiner must still be supported by substantial evidence in the record.").

For the reasons stated above, the Court finds substantial evidence to supports the ALJ's mental RFC finding.

**C. CONCLUSION**

In all, when the Court applies, as it must, the substantial evidence standard, it is required to affirm the decision of the Commissioner in this case. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46,49 (2d Cir. 2010) (internal quotations marks omitted). This means that when the medical evidence "is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149.

Therefore, after a thorough review of the record and consideration of all arguments Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that his opinion is supported by substantial evidence. For the reasons stated, Plaintiff's Motion for Order Reversing the Commissioner's Decision **[Doc. #15]** is **DENIED**. Defendant's Motion for an Order Affirming the Commissioner's Decision **[Doc. #19]** is **GRANTED**.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. §636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to

enter judgment in favor of the Defendant and close this case.

SO ORDERED, this 26th day of February, 2020, at Bridgeport, Connecticut.

                               */s/ William I. Garfinkel*
                               WILLIAM I. GARFINKEL
                               United States Magistrate Judge